NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

---------------------------------------------------------------X
In re:

TransVantage Solutions, Inc., *et al.*,

       Debtor.
---------------------------------------------------------------X

Alfred T. Giuliano, Chapter 7 Trustee for
TransVantage Solutions, Inc., *et al.*,

       Plaintiff,

vs.

Delta Air Lines, Inc. *et al.*,

       Defendants.
---------------------------------------------------------------X

Bankruptcy Case No. 13-19753

Chapter 7

Adversary No. 15-1882

**MEMORANDUM OPINION**

## APPEARANCES

SAMUEL H. ISRAEL, ESQUIRE
RAYMOND T. LYONS, ESQUIRE
Fox Rothschild, LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Attorneys for Plaintiff, Alfred T. Giuliano, Chapter 7 Trustee
for TransVantage Solutions, Inc. *et al.*

AARON CASSAT, ESQUIRE
Federal Express Corporation
3620 Hacks Cross Road
Memphis, TN 38125
Attorney for Defendant, FedEx Custom Critical, Inc., FedEx Freight Corporation d/b/a FedEx National LTL Economy, FedEx Ground Package System, Inc., and FedEx Truckload Brokerage, Inc.

D. ALEXANDER BARNES, ESQUIRE
Obermayer, Rebmann, Maxwell & Hippel, LLP
20 Brace Road, Suite 300
Cherry Hill, NJ 08034
Attorney for Defendant, Roadtex Transportation Management Corporation

JOSEPH A. MARINO, ESQUIRE
Marino, Mayers & Jarrach, LLC
75 Kingsland Avenue, Suite 3
Clifton, NJ 07014

    -and-

WANDA BORGES, ESQUIRE
Borges & Associates, LLC
575 Underhill Boulevard, Suite 118
Syosset, NY 11791
Attorney for Defendant, Southeastern Freight Line, Inc.

RICK A. STEINBERG, ESQUIRE
Price, Meese, Shulman & D'Arminio, PC
Mack-Cali Corporate Center
50 Tice Boulevard
Woodcliff Lake, NJ 07667

    -and-

KENNETH T. LAW, ESQUIRE
Bialson, Bergen & Schwab
2600 El Camino Real – Suite 300
Palo Alto, CA 94306
Attorney for Defendant, United Parcel Service, Inc. d/b/a UPS Air Cargo, UPS Ground Freight, Inc. d/b/a UPS Freight, and UPS Supply Chain Solutions, Inc.

**KATHRYN C. FERGUSON, CHIEF U.S.B.J.**

In April 2015, Alfred Giuliano, Chapter 7 Trustee for TransVantage Solutions, Inc., *et al.*,[1] filed hundreds of preference and fraudulent transfer complaints against various defendants ("avoidance actions"). The court partially consolidated the avoidance actions to permit the defendants to file an Omnibus Motion to Dismiss covering common threshold issues.[2] The court also permitted defendants to file Individualized Motions to Dismiss to address any grounds for dismissal not covered by the Omnibus Motion.

The Omnibus Motion to Dismiss was filed on July 24, 2015, in the lead adversary proceeding.[3] The Chapter 7 Trustee filed opposition to the Omnibus Motion on September 15, 2016.[4] The defendants filed a Memorandum in Further Support of the Motion[5] and the Trustee filed a certification in support of Supplement to the Opposition to the Omnibus Motion on June 14, 2016.[6] The FedEx defendants[7] filed an Individualized Memorandum of Law in Support of Motion to Dismiss.[8]

The Trustee settled the vast majority of the avoidance actions. The defendants in ten of the avoidance actions have not entered into settlements with the Trustee and sought to go forward with the Omnibus Motion to Dismiss ("remaining defendants"). On June 21, 2016, the

---

[1] The Debtors are the following entities: TransVantage Solutions, Inc.; TransVantage Forwarding, Inc.; and TransVantage Transportation, Inc.
[2] Order Granting In Part And Denying In Part Motion To Consolidate And Temporarily Stay Adversary Proceedings [Doc. 1150]
[3] 15-1882; Doc. 101
[4] 15-1882; Doc. 159
[5] 15-1882; Doc. 187
[6] 15-1882; Doc. 199
[7] FedEx Ground Package System, Inc.; FedEx Custom Critical, Inc.; FedEx Truckload Brokerage, Inc.; and FedEx Freight Corporation
[8] 15-1882; Doc. 133

court took argument on the Omnibus Motion to Dismiss from the remaining defendants and reserved decision.[9]

**Standards for motion to dismiss**

The remaining defendants seek dismissal of the Trustee's complaints under Federal Rule of Bankruptcy Procedure 7012(b)(6). That rule provides that before a responsive pleading is filed, a party may assert by motion the defense of "failure to state a claim upon which relief can be granted."[10] In a pair of cases, the Supreme Court refined the long-applied standard for evaluating motions to dismiss set forth in *Conley v. Gibson*.[11] As a result, there has been an explosion of Rule 12(b)(6) motions in the federal courts. That explosion is largely unwarranted. While *Iqbal* and *Twombly* signaled a move away from the "hyper-literal" understanding of *Conley's* "no set of facts" language, those cases did not intend to eviscerate the notice pleading standard.[12] As the Third Circuit has noted, "under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and an [sic] showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"[13] It remains an acceptable statement of the standard that courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[14]

---

[9] Remaining defendant Tingue Brown & Company [Adv. 15-1890] neither appeared at oral argument nor informed the court that it intended to rely on its papers as permitted by D.N.J. LBR 9013-3. The court will consider Tingue Brown & Co. to have abandoned the motion to dismiss.
[10] Fed. R. Civ. P. 12(b)(6) is made applicable in bankruptcy by Fed. R. Bankr. P. 7012
[11] 355 U.S. 41 (1957)
[12] *Twombly*, 127 S. Ct. at 1964
[13] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1964)
[14] *Phillips at* 233 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002))

**Preference**

To determine the adequacy of a complaint under this standard, a court should: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and then, (3) based on the well-plead components of the complaint, evaluate whether all elements previously identified are sufficiently alleged.[15] All well-pleaded facts must be accepted as true at this juncture.[16] To successfully plead a preference cause of action, the trustee must plead enough factual matter to plausibly allege that there was a transfer of an interest of the debtor in property: "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such a transfer was made; (3) made while the debtor was insolvent; (4) made – (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title."[17]

The first issue the court must determine is whether the property transferred was "an interest of the debtor in property." At oral argument, one of the attorneys for the remaining defendants stated that this issue was "crucial to this motion"[18] because of the allegations at paragraph 11 of the complaint. Paragraph 11 of the complaint states:

> Pursuant to these various Transportation Contracts, a Customer would advance funds to TransVantage Solutions, which funds were required to be held in trust and used only for the payment of the particular Creditor's freight bills. TransVantage Solutions was required to audit a Customer's

---

[15] *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)
[16] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009)
[17] 11 U.S.C. § 547(b)
[18] *Transcript of June 21, 2016 hearing* at 8

freight bills and use the advanced funds held in trust to pay the freight bills. Based on the use of the word "trust," the remaining defendants want the court to dismiss the complaint with prejudice because property held in trust is not property of the estate.

The court finds that the "trust" language in paragraph 11 is not determinative. As the Third Circuit instructs, after a court identifies the elements of a claim it should review the complaint to strike conclusory allegations.[19] The Trustee's use of the word "trust" in the complaint, however ill-advised, is at best a conclusory allegation that should be stricken.[20] Determining whether something is a true trust for bankruptcy purposes is a legal determination for the court to make, it should not be done on a motion to dismiss. The Supreme Court has held that for the purposes of a motion to dismiss a court is "not bound to accept as true a legal conclusion couched as a factual allegation."[21] Additionally, courts consistently emphasize that the Federal Rules should not be interpreted in a gamesman-like manner so that the slightest misstep is fatal.[22] So, while the complaint's use of the term "trust" may have been less than optimal, it should not result in dismissal.[23] All the more so because at this early stage of the proceeding[24] the court can and should freely allow the complaint to be amended in accordance with Rule 15(a)(2). The Third Circuit has noted that when a complaint is "not as rich with detail as some might prefer" the proper course of action would be to allow a party to amend the

---

[19] *Fowler*, 578 F.3d at 210-11
[20] *See*, *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)
[21] *Twombly*, 127 S. Ct. 1955 (internal quotation marks omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (when presented with a motion to dismiss for failure to state a claim, courts may disregard any legal conclusions)
[22] *See, e.g., In re Yadidi,* 274 B.R. 843 (9th Cir. BAP 2002)
[23] A statement in an unverified complaint does not have the same force and effect as an admission made during discovery. *See*, Fed. R. Civ. P. 36 ("A matter admitted under this rule is conclusively established.") But, even an admission pursuant to Rule 36 may be withdrawn or amended with the permission of the court. *See*, Rule 36(b)
[24] Although these complaints were filed in April 2015, due to various adjournments requested by the parties from a procedural standpoint we are the very beginning of the case.

6

complaint to cure that deficiency rather than to dismiss.[25] The draconian remedy of dismissal with prejudice should be reserved for complaints that are so deficient that a plaintiff should not even be able to proceed to the discovery phase. A facially plausible complaint should not be dismissed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"[26]

After striking conclusory allegations, the court should then, based on the well-plead allegations of the complaint, evaluate whether all elements of the claim are sufficiently alleged. On the issue of the transferred funds being property of the estate, the Trustee's complaint[27] pled that there were payments made from a bank account in the Debtor's name. Specifically, the complaint states that "TransVantage Solutions established a bank account at Bank of America for receipt of the funds advanced by the Customers for the payment of freight bills. (hereafter, the "Freight Payment Plan Account")." Accepting that as true, those facts establish that the property that was transferred, *i.e.,* funds from the Freight Payment Plan Account, was an interest of the debtor in property. At a bare minimum, the Debtor had a possessory interest in the funds in its own bank account.

Having found that the complaint adequately pleads that the transfer was of an interest of the debtor in property, the court must determine if the complaint properly pleads that the transfer was "to or for the benefit of a creditor." The complaint states that the payments made to the Carriers[28] were for the benefit of the Customers who *owed* the freight bills. Although not

---

[25] *Fowler* at 212
[26] *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))
[27] The complaints are not precisely the same, but where the differences are not crucial to the analysis the court will treat them as one.
[28] The only customer left of the remaining defendants was Tingue Brown and the court has determined that Tingue Brown has abandoned the motion to dismiss.

explicitly spelled out in the complaint, the logical inference from that statement is that the Customers meet the Code's definition of a creditor. In *Twombly* and *Iqbal*, the Supreme Court did not address drawing reasonable inferences in favor of the plaintiff on a motion to dismiss, but the Third Circuit has held that it does not read those decisions as undermining that principle.[29] Section 101(10) of the Bankruptcy Code defines a creditor as an "entity that has a claim against the debtor." The Customers would plausibly have had a claim against the Debtor simply by virtue of advancing funds to TransVantage to be used to pay the Carriers.

Next, the transfer must have been "for or on account of an antecedent debt owed by the debtor." In its individual brief, FedEx argues that the failure to allege an antecedent debt owed by TransVantage to FedEx is dispositive because its business relationship was with TransVantage's Customers; FedEx did not have any contractual relationship with the Debtor. That argument reads language into the statute that is simply not there. Section 547(b)(2) does not state that the antecedent debt must be owed by the debtor to the defendant, it merely states that it must be "owed by the debtor". The fact that the debtor owed an antecedent debt to FedEx's contractual partner is sufficient when read in conjunction with § 547(b)(1) which provides that the transfer must be "to **or for** the benefit of a creditor." A payment to FedEx would have been for the benefit of the Customer.

FedEx's additional argument that there is no obligation to the Customer until TransVantage breaches the contract goes beyond what is appropriate on a motion to dismiss. This is not a summary judgment motion; the court need only look to the four corners of the complaint and determine if a plausible cause of action for a preference has been alleged.

---

[29] *Phillips*, 515 F.3d at 231

The next element under § 547(b) is that the transfer was made while the debtor was insolvent. There is a statutory presumption of insolvency in the 90 days prior to filing by virtue of § 547(f). In addition, the Trustee has pled at paragraph 16 that there was a $40 million shortfall when the company filed for bankruptcy. That allegation along with the statutory presumption are sufficient to plead insolvency.[30]

The next element is that the transfer was made within 90 days of the filing. That element was clearly pled in the complaints and all the payments were itemized as exhibits to each preference complaint.

The final element for a preference is that the transfer enabled the creditor to receive more than it would have in a Chapter 7 but for the transfer. The Trustee has pled that, based on the schedules and the claims that have been filed, TransVantage's liabilities exceeded its assets such that all of the debtors' unsecured creditors would not receive full payment. The Customers whose freight carriers received either full or partial payment made out much better than those Customers whose Carriers received no payment.

The court finds that on its face the complaint contains enough factual matter to plausibly allege that there was a preference. The Third Circuit has stated that "[c]ontext matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case …."[31] This is a complex commercial dispute involving sophisticated counsel. In that context, it is not difficult to conclude that the fair notice requirements of Rule 8 have been satisfied.

---

[30] As an alternative theory, the Trustee alleges that there was a Ponzi scheme. The existence of a Ponzi scheme is a legal conclusion that the court may disregard on a motion to dismiss, but the attendant facts attempting to establish a Ponzi scheme may be relied upon on a motion to dismiss.

[31] *Phillips* at 232

FedEx raises an ordinary course of business defense under § 547(c).[32] To the extent consideration of a statutory defense is even appropriate on a motion to dismiss, the court finds FedEx's argument unpersuasive. Section 547(c)(2) of the Bankruptcy Code provides that a trustee may not recover an otherwise preferential transfer to the extent that the transfer was "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was – (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms."[33] Taking the factual allegations in the complaint as true, the court finds that the payments were neither made in the ordinary course of business nor made according to ordinary business terms. Paragraph 15 of the complaint states that "since the 1990s, TransVantage Solutions began using funds advanced by one Customer to pay another Customer's freight bills." If that is true, then the method of payment deviated from the ordinary course of business which was supposed to have been that the funds paid by the Customers were held specifically to pay the freight bills of that Customer and only that Customer. The court also finds, for purposes of this motion to dismiss, that the Sooys using Customer funds to pay "the expenses of affiliated entities and to purchase personal items" was not consistent with ordinary business terms.

**Fraudulent transfer**

The complaint seeks to avoid various fraudulent transfers under state[34] and federal law.[35] To take advantage of New Jersey's fraudulent transfer statute, the trustee must use § 544(b) of the Bankruptcy Code. The remaining defendants argue that the complaint fails on that front

---

[32] FedEx relied on the former version of § 547(c). The statute was changed in 2005 as part of BAPCPA.
[33] 11 U.S.C. § 547(c)
[34] N.J.S.A. 25:2-25 and 25:2-27
[35] 11 U.S.C. § 548

because § 544(b) requires the trustee to identify an actual creditor holding an allowed unsecured claim who could avoid the challenged transfers. The court agrees with the *D'Angelo* court which held that "[w]hen analyzing the sufficiency of a complaint for purposes of Rule 12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists."[36] So, that argument is unavailing on a motion to dismiss. The court finds that the allegations at paragraph 59 of the complaint are sufficient under § 544(b).

Next, the remaining defendants argue that the allegations concerning the Debtors' intent to hinder, delay or defraud creditors do not meet the heightened pleading standards of Rule 9(b). The flaw in that argument is that Rule 9(b) has heightened pleading standards for the circumstances constituting fraud, but specifically states that intent "may be alleged generally." That position is particularly logical when applied to a trustee in bankruptcy who is basing his allegations on second-hand knowledge.[37] To dismiss a trustee's complaint without the benefit of discovery to flesh out the intent issue would be particularly unfair to the estate and its creditors. Even without the allegations of a Ponzi scheme, the court finds that the complaint sufficiently pleads intent. By alleging that for years the Sooys were not segregating the funds in the Freight Payment Plan Account, but instead using them to pay personal and business expenses, the complaint adequately pleads actual intent to hinder, delay or defraud. Courts have long recognized that "knowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent."[38] In the law of torts, "[k]nowledge to a substantial certainty

---

[36] *In re D'Angelo*, 491 B.R. 395, 405 (E.D. Pa. 2013)
[37] *In re New Jersey Affordable Homes Corp.*, 2013 WL 6048836 (Bankr. D.N.J. Nov. 8, 2013)
[38] *Hayes v. Palm Seedlings Partners-A*, 916 F.2d 528, 535 (9th Cir. 1990)

11

constitutes intent in the eyes of the law."[39] The Sooys had to have known to a substantial certainty that paying personal expenses with money designated for payment of freight bills would operate to the detriment of its customers. Accordingly, the court finds that the complaint sufficiently pleads actual fraud under § 548(a)(1)(A) and N.J.S.A. 25:2-25(a).

The complaint also includes causes of action for constructive fraud under § 548(a)(1)(B) and N.J.S.A. 25:2-27. Both statues require that the debtor received less than reasonably equivalent value in exchange for the transfer, and that the debtor was insolvent at the time of the transfer or was rendered insolvent. The remaining defendants argue that the constructive fraud counts fail both because TransVantage received reasonably equivalent value in exchange for each alleged transfer, and also because without the Ponzi scheme presumption, the Trustee fails to allege insolvency.

On the reasonably equivalent value issue, the remaining defendants note that the Third Circuit in analyzing § 548(a)(1)(B) has stated that because the purpose of the statute "is estate preservation … the question of whether the debtor received reasonable value must be determined from the standpoint of the creditors."[40] The remaining defendants then rely on *Image Master* for the proposition that the proper focus of a reasonably equivalent value inquiry "is the specific transaction sought to be avoided, not the transfer's collateral effects on the welfare of the business."[41] The remaining defendants then conclude that each transfer was a "wash" because each payment made to the Carriers reduced a corresponding liability owed to them by TransVantage (on behalf of the Customers) on a dollar for dollar basis. That may or may not be a valid argument, but such a determination is highly fact sensitive and is improper on a motion to

---

[39] *In re Global Trading Invs.,* LLC, 2006 WL 3040918 (Bankr. D.N.J. Oct. 25, 2006) (citing Restatement (Second) of Torts § 8A (1963 & 1964))
[40] *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 646 (3d Cir. 1991)
[41] *Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375, 390 (Bankr. E.D. Pa. 2013)

dismiss. Other courts in this Circuit have noted that "[q]uantifying [reasonably equivalent value] is an issue of fact … that can only be properly developed with discovery and at trial."[42]

On the issue of insolvency, paragraph 55 of the complaint alleges that at the time of the transfers "TransVantage Solutions' debts were greater than its assets and TransVantage Solutions could only operate in reliance on new funds it received from Customers to maintain TransVantage Solutions' business operations and pay the transportation bills of its other Customers." New Jersey's fraudulent transfer statute defines insolvency as "if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."[43] Similarly, the Bankruptcy Code defies insolvency as when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation."[44] Under either definition of insolvency, the allegations in the complaint suffice on a motion to dismiss. The statement in paragraph 55 taken in the context of the entire complaint raises it above the level of a mere formulaic recitation of the elements of the cause of action. The Third Circuit has stated that when evaluating a complaint on a motion to dismiss a court must be "attentive to context."[45]

Overall, the court finds that the allegations in the complaint more than satisfy Rule 8's mandate of putting a defendant on notice of the claims against it. "In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on ... judicial experience and common sense."[46] Based on this court's experience, this is not a complaint that fails the plausibility test.

---

[42] *In re Washington Mut. Inc.*, 2013 WL 3757330 (Bankr. D. Del. July 16, 2013); *In re Halpert & Co., Inc.*, 254 B.R. 104, 115 (Bankr. D.N.J. 1999) ("Since resolving [the issue of reasonably equivalent value] would require a 'fact sensitive' inquiry, it would be improper for the Court to decide it on a motion to dismiss.")
[43] N.J.S.A. 25:2-23(a)
[44] 11 U.S.C. § 101(32)
[45] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)
[46] *Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014) (internal quotation marks omitted)

**Preemption or limitation under federal law**

The remaining defendants urge the court to dismiss all of the trustee's state law fraudulent transfer claims because they are preempted by the Federal Aviation Administration Authorization Act.[47] They also argue that the FAAAA limits any remaining fraudulent transfer claims to 18 months prior to the bankruptcy filing.

The FAAAA expressly preempts any law "related to a price, route or service of any motor carrier, … broker, or freight forwarder with respect to the transportation of property." Despite the fact that the statue has been broadly interpreted, the court notes that the remaining defendants have not cited a single case in which the law was applied to preempt the Bankruptcy Code or New Jersey's fraudulent transfer statute. They also fail to address the fact that the trustee's powers under state law are derivative of his powers under the Bankruptcy Code, and as such are not pure state law claims. So, the court agrees with the trustee's position that because two federal laws are involved the issue is one of harmonizing the two statutory schemes rather than one of preemption. In this instance, the court finds there is no conflict between the FAAAA and the Bankruptcy Code. One statute is designed to promote efficiency, competition and innovation in transportation[48] and the other is designed to treat all similarly situated creditors equally.[49] Advancing the Bankruptcy Code's goal of equality of distribution through allowing avoidance actions in no meaningful way interferes with the goal of increased competition in interstate transportation. Even if the court perceived a conflict, it agrees with the pronouncement that "[w]here reconciliation of the objectives of the Bankruptcy Code with those of another statutory scheme reveals that the effect of the non-bankruptcy statute is to restructure the

---

[47] 49 U.S.C. § 14501
[48] H.R. Conf. Rep. No. 103-677, 103rd Cong. 2nd sess. (1994)
[49] H.R. Rep. No. 595, 95th Cong. 2nd sess. (1977)

debtor/creditor relationship rather than advance its own fundamental concerns, the intersecting non-bankruptcy statute must yield to the Bankruptcy Code."[50] That applies to the statute of limitations in the FAAAA as well.

<u>Conclusion</u>

For the reasons stated in this opinion, the Omnibus Motion to Dismiss is denied in its entirety. The court will enter a standard order denying the motion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
Chief Judge, US Bankruptcy Court

Dated: October 6, 2016

---

[50] *Medicar Ambulance Co., Inc. v. Shalala (In re Medicar Ambulance Co., Inc.)*, 166 B.R. 918, 925 (Bankr. N.D. Cal. 1994); *see also*, *In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 95 (Bankr. E.D. Va. 1995)